## SUSSBERG & FEINBERG, Inc., v. TRIANGLE UNDERWEAR CORPORATION.

District Court, S. D. New York.

July 1, 1937.

Munn, Anderson & Liddy, of New York City (T. Hart Anderson and John H. Glaccum, both of New York City, of counsel), for plaintiff.

David Haar, of New York City (Morris Kirschstein, of New York City, of counsel), for defendant.

GODDARD, District Judge.

This suit is for the infringement of United States letters patent No. 1,981,760, issued November 20, 1934, to Victor L. Sussberg and assigned on December 3, 1934, to Sussberg & Feinberg, Inc., the plaintiff. The patent relates to a woman's undergarment commonly known as a "slip," and sold by plaintiff under the name of "Sylfit." Several defenses were raised in the answer, but upon the trial the defendant relied solely upon the defense of invalidity for noninvention in view of the prior art.

The structural features of plaintiff's garment are:

1. A slip made from two panels, front and back, each cut on the bias, with the top or yoke portion shaped so as to present a triangular or A-shaped projection.

2. To the top portions of each of such panels is secured a "brassiere section to present the desired support for the busts."

3. This "brassiere section" is comprised of panels stitched along the edges of the A projection of the front and back panels, the front and back panels being joined together along their sides by stitching. Near the waist line the body and shield panels are curved like an arc so that when stitched together a curved seam is formed "immediately below the busts."

Undergarments for women combining both a body portion and a brassiere section have been in general use for many years. The purpose and function of the bias cut—that is, cutting the material at an angle to the warp and filler threads—was disclosed and explained in Garfinkel's patent No. 1,-877,745, issued September 13, 1932. The advantage of bias cut material is that a garment so made readily molds and adapts itself to the figure of the wearer because of the stretch permitted along the bias line. Bias cut slips made from two panels, front and back, connected by side seams and terminating in the upper portion in a triangular A shape into which shields were fitted, were being widely sold when the plaintiff produced its slip. Shields of various shapes had also been used. In the slips then on the market the body panels were cut with a straight triangular section extending from each side, so that when the shields were set in, the seam connecting the shields to the body panel formed a straight line from the center of the triangle to the sides.

When form-fitting gowns for women came into vogue, a demand for close-fitting undergarments naturally followed, and the plaintiff produced its slip in which, instead of the straight seam below the bust, a curved one was used to make the slip fit more snugly and to prevent sagging. It is this curved seam which forms the basis of plaintiff's claim of invention. The use of a curved seam, rather than a straight one, does not, I think, amount to invention and entitle the plaintiff to a monopoly of it. It seems to me that if a form-fitting garment was desired it would occur to one ordinarily skilled in the art of designing garments to use a curved seam instead of a straight one to make it fit better and to prevent sagging. The device of curved seams has been adopted by tailors for years to make a more shapely coat, and the idea is found in other articles of apparel of former years where a close fit and smoothness was wanted. In confirmation of this, counsel for defendant has submitted a number of illustrations from ladies' fashion magazines and publications with more or less similar curved seams or which include the idea of such curved seams. These were submitted, not as showing anticipation of the patent, but for the purpose of showing the state of the art and that what this patentee did was not novel and does not involve invention.

The plaintiff stresses the commercial success of its "Sylfit" slip as proof of invention, but in the present instance its large sales may well have been due to its extensive advertising, or to circumstances other than invention. I think the patent is invalid for lack of invention, and the bill is dismissed.